**In the Matter of Frank FERNANDEZ and Sandra Fernandez, Debtors.**

**Bankruptcy No. 90–7264–8B3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 22, 1991.

318

Dennis J. LeVine, Tampa, Fla., for debtors.

Chris C. Larimore, Bradenton, Fla., Trustee.

### ORDER ON DEBTORS' MOTION FOR ORDER OF CONTEMPT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on to be heard on January 11, 1991, upon Debtors' Motion for Order of Contempt against the Internal Revenue Service (IRS). The Court considers the Motion a motion for sanctions against the IRS pursuant to Title 11 U.S.C. § 362(h). The Debtors filed their Chapter 13 petition on July 25, 1990. The IRS had previously filed a Notice of Levy (pre-petition levy). On August 6, 1990, this Court gave notice of the bankruptcy to scheduled creditors, including the IRS. On August 15, 1990, the IRS filed another Notice of Levy (postpetition levy). The IRS admits receiving notice of the filing of the Chapter 13 petition on August 20, 1990, however, such notice was not placed into the IRS computer until September 10, 1990, because there is a three week lag time between the receipt of notice and the dissemination of that notice throughout the IRS.

The employer of one Debtor, Southwest Florida Water Management District, re-

ceived the post-petition levy September 27, 1990, and forwarded Debtor's quarterly paycheck to the IRS. The IRS, contacted by Debtors' counsel on October 3, 1990, set the wheels in motion to release the funds which were returned to the Debtors on December 23, 1990. During this time the IRS filed a proof of claim less the amount of the levy ($420.00) and then filed an amended proof of claim putting the $420.00 back in their claim.

Unfortunately, the initial pre-petition levy has lain dormant like a mine in the sea of law. The pre-petition levy affected the Debtor's post-petition wages in December 1990. These post-petition wages in the amount of $2,300.00 were being held by another employer of one Debtor, the United States Coast and Geodetic Survey, for the IRS. However, the IRS has not yet obtained possession of those funds. Prior to the hearing in January 1991, Debtors' counsel once again notified the IRS of their post-petition levying, this time because of their pre-petition acts.

■■■ As to the post-petition levy, this Court finds that such a levy is a technical breach of the automatic stay. The IRS took the appropriate action upon receiving notice and returning the funds to the Debtors. However, through the bureaucracy of the IRS, Debtors were deprived of such funds almost 90 days. It is this Court's belief the IRS has the duty to ensure that its pre-petition or post-petition levies are not only neutralized upon notification of the bankruptcy, but the IRS must seek to turn over the funds seized quickly or seek adequate protection or relief from the automatic stay in the bankruptcy court. Here, the IRS sought to turn over the funds but did not move efficiently. If they have an efficient method of collection, they must have an efficient turnover mechanism to prevent sanctions under Section 362(h). This Court finds that 90 days to turn over $420.00 is intolerable, especially since the

IRS filed its proof of claim and amended it as to those seized funds within that time frame. Therefore, this Court finds the Debtors are entitled to 11% interest on the $420.00 from September 27, 1990, the date of levy, until the date of return of the funds, December 23, 1990.

■■■ As to the post-petition seizure of funds predicated on the pre-petition levy, the IRS has a duty to ensure such a levy does not function post-petition. There is no doubt in this case the IRS did deal with their post-petition levy while they disregarded the fact that they had a pre-petition levy in existence which continued to function almost six months later. Under the facts in this case, the Court finds a violation of automatic stay as to the operation of a pre-petition notice of levy and awards Debtors 11% interest from the date of seizure to the date of return of funds held by the U.S. Coast and Geodetic Survey plus attorney's fees.[1]

## LEGAL ISSUES

■■■ The IRS takes the position it is immune from any money damages by virtue of sovereign immunity. In addition, the IRS argues Section 106 of the Bankruptcy Code does not create any waiver of such protection to the IRS in this case. *See, Hoffman v. Connecticut Department of Income Maintenance et al,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

First, the Supreme Court's decision in *Hoffman* concerns the states' Eleventh Amendment constitutional protection and not whether Section 106 waives such protection to the federal government.[2] In a 5–4 decision the Supreme Court held that Congress, by enacting the Bankruptcy Code, and more specifically Section 106, did not waive such Eleventh Amendment protection. *Hoffman's* applicability in this case is questionable, notwithstanding the dicta of the Court of Appeals for the Ninth

---

1. Attorney fees are awarded pursuant to Title 11 U.S.C. § 362(h) and not Title 26 U.S.C. § 7430. *See, Internal Revenue Service v. Brickell Inv. Corp. (In re Brickell Inv. Corp.),* 922 F.2d 696 (11th Cir.1991).

2. The Court of Appeals for the Eleventh Circuit has followed *Hoffman* without comment on the waiver effect on the federal government. *Tew v. Arizona State Retirement Systems,* 873 F.2d 1400 (11th Cir.1989).

Circuit in *Pearson v. United States (In re Pearson)*, 917 F.2d 1215 (9th Cir.1990). The Ninth Circuit, while acknowledging the difference between sovereign immunity waiver as to the states and as to the federal government, stated:

> While other courts have found this rationale sufficient, [*Small Business Admin. v. Rinehart*, 887 F.2d 165, 169–70 (8th Cir.1989)], we know that four is less than five. We therefore turn to the reasoning of the four *Hoffman* dissenters. (Footnote deleted). They concluded that section 106(c) *did* purport to waive the government's immunity from suit for money judgments. However, they also noted that the Bankruptcy Code provision permitting damages awards for violation of the automatic stay, section 362(h), does not include any of the three magic words of section 106(c), and therefore does not apply to governmental units. *Hoffman*, 109 S.Ct. at 2826 n. 4 (Marshall, J., joined by Brennan, Blackmun & Stevens, JJ., dissenting). Although a footnote in a dissent is not exactly a holding, we have no reason to doubt that one or more of the *Hoffman* dissenters would adhere to this rationale. It therefore appears that a majority of the Supreme Court would hold that governmental units are immune to damages actions arising from violations of the automatic stay. Reading the tea leaves, we so hold.

*Pearson* at 1216.

This Court, not being bound by the Ninth Circuit's opinion and not reading the tea leaves in the same way, would suggest that Section 106(a) and (b) is a waiver of sovereign immunity and Section 362(h) relates in *pari materia* with that section to authorize the awarding of attorney's fees and damages to the Debtor in this case. Even the Supreme Court in *Hoffman* acknowledged the efficacy of this waiver. *Hoffman*, 109 S.Ct. at 2822. The waiver predicate is the sovereign's filing a proof of claim as in this case.[3] *See also, Anderson v. FDIC*, 918 F.2d 1139 (4th Cir.1990); *United States v.*

*Bulson (In re Bulson)*, 117 B.R. 537 (BAP 9th Cir.1990); *Bryant v. United States (In re Bryant)*, 116 B.R. 272, 275 (Bankr.D. Kan.1990); *United States v. INSLAW, Inc. (In re INSLAW, Inc.)*, 113 B.R. 802, 812–813 (D.C.1989).

The Courts of Appeals for the Sixth and Eighth Circuits have found Section 106(a) waives sovereign immunity as to the federal government. *Ashbrook v. Block*, 917 F.2d 918 (6th Cir.1990); *Internal Revenue Service v. Nordic Village, Inc. (In re Nordic Village, Inc.)*, 915 F.2d 1049 (6th Cir.1990). As the Court of Appeals for the Eighth Circuit stated in *United States v. McPeck*, 910 F.2d 509 (8th Cir.1990), Section 106(c) does not waive the federal government's sovereign immunity to monetary sanctions. However, Section 106(a) does.

> Subsection (a) authorizes monetary recovery from a governmental unit if (1) the governmental unit has a claim against the estate, (2) the debtor's claim against the governmental unit is property of the estate, and (3) the two claims arose from the same "transaction or occurrence."

> The United States does not deny that the first two requirements of subsection (a) have been satisfied. (Footnote omitted). However, it argues that McPeck's claim for damages did not "arise from the same transaction or occurrence" as the IRS's claim upon the tax debt. This is a question that has resulted in a split of authority among the few bankruptcy courts that have addressed it. (Cites omitted).

> We do not pass on this issue, however, because we think that the proper provision to be applied in this case is subsection (b). Subsection (b) does not require that the two claims "arise from the same transaction or occurrence." *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 317, *reprinted in* 1978 U.S.Code Cong. and Admin.News 5787, 5963, 6274. Unlike

---

**3.** The IRS filed its claim on November 7, 1990, and amended claim on December 3, 1990. The total amount of the claim is $1,607.20. *See,*

*United States v. Inslaw, Inc. (In re Inslaw, Inc.)*, 113 B.R. 802, 812–813 (D.C.1989).

subsection (a), however, subsection (b) limits the waiver of sovereign immunity to an offset of the governmental unit's claim against the estate. Both parties minimally address subsection (b) in their briefs, apparently because the bankruptcy court did not specifically authorize an offset in this case. We find, however, that offset was the proper procedure to follow in this case.

*Id.* at 512. The Court in *McPeck* went on to find Section 106(a) and 106(b) of the Bankruptcy Code must be read together and that Section 106(a)'s applicability related to a situation where the debtor's claim exceeded the claim of the governmental unit and which would establish "an affirmative recovery." Where the IRS claim exceeds that of the sanctions imposed against the IRS, then the proper procedure is an offset against that claim. *McPeck, supra* at 513. *See also, Small Business Admin. v. Rinehart*, 887 F.2d 165 (8th Cir.1989).

■ Even if there were a question of the lack of waiver under *Hoffman*, the awarding of attorney's fees for breach of the automatic stay does not require a waiver of sovereign immunity. *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 2467, 105 L.Ed.2d 229 (1989).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the IRS shall turn over all monies by February 1, 1991. It is further

ORDERED, ADJUDGED AND DECREED that this Court awards Debtors sanctions pursuant to Title 11 U.S.C. § 362(h) of 11% interest on all funds retained as set forth herein plus $1,000.00 in attorney's fees to be paid by March 1, 1991. Failure to return such funds or pay sanctions may be a basis for reduction of the IRS' claim or the award of further sanctions.

DONE AND ORDERED.